# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JENNIFER I. TOOTLE HENRY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. CIV-18-385-RAW-SPS |
| ) | |
| **COMMISSIONER of the Social** ) | |
| **Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

The claimant Jennifer I. Tootle Henry requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was forty-eight years old at the time of the administrative hearing (Tr. 146). She completed high school and four years of college and has worked as an elementary school teacher (Tr. 48, 329). The claimant alleges inability to work since August 15, 2103, due to depression, anxiety, nerves, difficulty being around people, and pain in legs and lower back (Tr. 328).

## Procedural History

On April 13, 2015, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ David W. Engel conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated October 6, 2017 (Tr. 30-50). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform a range of sedentary work, *i. e.*, she could lift/carry/push/pull ten pounds occasionally, five to nine pounds frequently, and only three pounds lifting overhead; stand/walk two hours each in an eight-hour workday; and was able to no more than occasionally perform overhead reaching or tasks requiring the use of foot pedals, as well as climb ramps/stairs, bend, stoop, crouch,

crawl, and kneel. Additionally, he determined that she could understand, remember, and carry out simple to moderately detailed instructions in a work-related setting (semi-skilled but not skilled work) on a sustained basis, and could only occasionally interact with the general public whether in person or over the telephone. Finally, he found that she was afflicted with symptoms from a variety of sources that cause pain and fatigue, as well as mental impairments that would be noticeable to her at all times, but that she would nevertheless be able to remain attentive and responsible in a work setting, and to perform work assignments with the above-mentioned limitations (Tr. 39). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *i. e.*, the unskilled jobs of hand packager, production worker, and inspector/tester (Tr. 47-49).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly evaluate her RFC, and (ii) failing to properly identify jobs she could perform with her impairments. As part of the first argument, the claimant asserts that the ALJ failed to properly account for her nonsevere cardiac issues; failed to account for her stress, problems concentrating, and attending work; failed to properly evaluate the treating physician of Dr. Richard Barrett; failed to make findings with regard to her ability to sit; and failed to properly evaluate her subjective complaints. The undersigned Magistrate Judge agrees that the ALJ erred in evaluating the claimant's RFC, particularly as it pertains to her mental impairments and Dr. Barrett's multiple opinions, and the decision of the Commissioner should be reversed.

The ALJ determined that the claimant had the severe impairments of major depressive disorder, generalized anxiety disorder, and degenerative disc disease, as well as the nonsevere impairments of obesity, hypertension, and cardiac issues (Tr. 35-36). The relevant medical evidence demonstrates that the claimant regularly sought treatment with her primary care provider for depression, anxiety, and chronic hip pain at least as far back as 2012 (Tr. 424). The claimant's mother became terminally ill in late 2013, and the claimant took a leave of absence to care for her (Tr. 447).

An MRI of the lumbar spine on May 21, 2015 revealed mild degenerative disc disease, greatest at L4-5 where there is mild central canal and bilateral neural foraminal narrowing (Tr. 528). On August 20, 2015, the claimant underwent an epidural steroid injection of L4-5 (Tr. 642). The claimant had a documented cardiac arrythmia, but an echocardiogram revealed trivial to mild aortic insufficiency (Tr. 777, 857).

The claimant also received treatment at Cornerstone Health with Dr. Cary Sullivan, D.O. Records reflect the claimant was positive for back pain, limb pain, and myalgias, and that she was also affected by a left leg limp that slowed her, as well as decreased range of motion with back flexion and extension (Tr. 695-754, 798-803, 870). Those same records also reflect the claimant's mood was regularly (though not always) agitated, anxious, and depressed (Tr. 695-754, 798-803).

On February 24, 2015, the claimant reported suicidal thoughts to Stigler Wellness Center, but stated that she was afraid to go to the emergency room because she did not want them to commit her (Tr. 584). The treatment for this episode appeared to be a medication adjustment (Tr. 587).

Treatment notes reflect that Dr. Barrett treated the claimant from October 2014 through at least December 2015. The Record of Services reflect he addressed a number of problems including guilt, depression, and anxiety (Tr. 606-611). Dr. Barrett completed an undated Mental Status Form regarding the claimant, noting that at the time of completing this form he had last seen her on February 26, 2015. He noted that she often appeared sad, anxious, and tearful, with very low motivation for any activity, which was a significant change. He also noted that she avoided interaction with others. He stated that she attempts to avoid all stress because she does not manage it well, and that thinking/reasoning were fair to poor due to difficulties with memory and attention, noting that she was afraid to/did not have the energy to respond (Tr. 499). He did not evaluate her for simplicity or complexity of instruction but expected she would have episodic difficulty with complex instructions, as well as a poor response to work pressure, supervisors, and coworkers (Tr. 499). He noted she had a fair but inconsistent response to psychotherapy, and that her anticipated improvement would be moderate at best (Tr. 499). His diagnoses were major depressive disorder, recurrent, moderate, as well as generalized anxiety disorder (Tr. 499).

On August 10, 2015, Dr. Barrett completed a Medical Source Statement as to the claimant's mental impairments (Tr. 877-880). He indicated that the claimant had extreme limitations in the ability to, *inter alia*, deal with work stresses, understand and remember detailed or complex instructions, carry out detailed or complex instructions, sustain an ordinary routine without special supervision, complete a normal workday or workweek, and perform at a consistent pace without an unreasonable number or length of rest periods (Tr. 877-879). Additionally, he noted that she would have severe limitations in the ability

to, *inter alia*, demonstrate reliability, interact with supervisors, maintain regular attendance, respond appropriately to changes in work setting, and behave in an emotionally stable manner (Tr. 877-879). He based this on his own psychological evaluation of the claimant as well as personal care/treatment and observation of her (Tr. 879).

On August 31, 2015, Dr. Barrett completed another Mental Status Form in which he noted that the claimant's personal grooming had been highly variable and that her ability to relate to others was impaired, as well as orientation, stress to be avoided, and the ability to think, reason, and respond (Tr. 603). He noted that she had continued with psychotherapy and gained the ability to tolerate one brief activity per day, but that she could not remember, comprehend, or carry out even simple instructions or respond to work pressure, supervisors, or coworkers (Tr. 603). That same day, he wrote a letter stating that he expected the claimant's ability to understand and carry out instructions to be impaired when under the stress of a workplace environment, and that she would be moderately to severely impaired in the ability to remember instructions and respond appropriately to supervision, coworkers, and workplace stress (Tr. 605). He further stated that she displays depressed mood with frequent crying spells, generalized anxiety, and ruminative thinking (Tr. 605). He stated she described persistent difficulty with memory and attention, that her symptoms had been present for five to six years, and that they were considered chronic in nature (Tr. 605).

The claimant also received mental health treatment at a facility in Fort Smith, Arkansas, where she was seen by Certified Nurse Practitioner Tara Norris. Treatment notes, which span from June 2016 to June 2017, reflect that the claimant largely reported

consistent moderate emotional sadness/worry happening in most environments on a daily basis or in all settings and disruptive to her functioning (Tr. 892-924). The most recent treatment note (which was also the most positive), dated June 28, 2017, states that the claimant reported mild emotional sadness/worry that is happening less often and less disruptive to patient's functioning, although the month before she had reported consistent moderate emotional sadness/worry/fear happening daily (Tr. 886, 889).

State reviewing physicians indicated that the claimant could perform light work with no manipulative, postural, visual, communicative, or environmental limitations (Tr. 214-215, 233-235). State reviewing physicians also completed Mental RFC assessments and concluded that the claimant could perform simple and some complex tasks, relate to peers and supervisors on a superficial work basis, and adapt to a work environment, but not relate to the general public (Tr. 217, 237).

The claimant asserts that the ALJ erred in evaluating the opinion evidence in the record, and the undersigned Magistrate Judge agrees. The medical opinions of treating physicians are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight. The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing

performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted]. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

In his written opinion, the ALJ provided a lengthy summary of the claimant's hearing testimony as well as much of the medical evidence in the record, taking pains to underline in the opinion where the claimant was taking care of her terminally ill mother, refused therapy, or findings were normal (Tr. 42-47). As to Dr. Barrett, the ALJ mistakenly stated that he only treated her from June to August 2015, and summarized some of his treatment notes, again underlining where Dr. Barrett had once indicated she had normal mental activity (Tr. 43). The ALJ stated that he limited the claimant to simple to moderately detailed instructions and no more than occasional interaction with the general public because mental status examinations found her alert, oriented, normal cognition and memory, good/fair eye contact, normal concentration and attention, and good hygiene (Tr. 44). As to the opinion evidence, the ALJ gave Dr. Barrett's August 2015 mental status examination "some weight," because he had only treated the claimant for a limited period

of time, and "subsequent treatment records contradict his functioning range." The ALJ cited three different exhibits in the record, without specifying how these records contradicted Dr. Barrett's findings. However, the records cited reflect, *inter alia*, the claimant's treatment mental health treatment record where only one record out of an entire year of treatment reflected improvement (Tr. 886-924). The ALJ then gave some weight to Dr. Barrett's letter, finding it supported some limitation related to the ability to understand, remember, and carry out instructions, and to interact with the public (Tr. 46). The ALJ also agreed that the claimant would have difficulty with complex work (Tr. 46). As to the state reviewing physician opinions, the ALJ gave them some weight "but not more because more recent [unspecified] mental health treatment records support less restricted limitations" (Tr. 47). He then specifically stated that greater limitations advocated by Dr. Barrett were not supported by the medical evidence (Tr. 47).

Although the ALJ noted the proper analysis at the outset of step four, he failed to properly apply it when he ignored evidence in the record, including supportive mental health treatment notes, and proceeded to reject every opinion of her examining and reviewing physicians. Instead, he imposed an RFC that would avoid a finding of disabled, while improperly rejecting the evidence as to her mental limitations, specifically evidence related to the claimant's limitations in carrying out instructions, interacting with coworkers, and the ability to handle stress (to the point where the claimant's accomplishment of one brief task per day was considered improvement). This implicates a failure to account for consistent, supportive evidence of the claimant's mental impairments, including treatment records reflecting depression and anxiety that interfered with her daily functioning. *See*

*Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-386 (7th Cir. 1984).

Because the ALJ failed to properly evaluate the evidence available in the record, the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 2nd day of March, 2020.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**